**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cartessa Aesthetics LLC, | No. CV-19-05827-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Aesthetics Biomedical Incorporated, | |
| Defendant. | |

Pending before the Court is Defendant Aesthetics Biomedical Incorporated's ("ABM") motion to order the return of undisputed funds and demonstration devices. (Doc. 44.) For the following reasons, that motion will be denied.

## BACKGROUND

ABM is the exclusive North American importer and distributor of a Korean microneedling device. (Doc. 20 at 13 ¶¶ 8-11.) In February 2017, ABM entered into a contractual arrangement with Cartessa Aesthetics LLC ("Cartessa") under which Cartessa was given the exclusive right to sell the device in certain U.S. territories and markets. (Doc. 9 ¶¶ 2, 11; Doc. 20 at 13-14 ¶¶ 12-13.) Although the parties' agreement provided that ABM was to receive payment for the devices first and remit commissions to Cartessa thereafter, in practice Cartessa accepted payment for the devices first and paid ABM second. (Doc. 14-1 at 6-7; Doc. 18 at 4-6.)

On December 16, 2019, Cartessa initiated this action. (Doc. 1.)

On January 14, 2020, Cartessa filed a first amended complaint ("FAC"). (Doc. 9.)

In a nutshell, the FAC alleges that ABM breached the exclusivity provisions of the parties' contract and also committed certain other contractual violations. (*Id.*)

On February 3, 2020, Cartessa filed a motion for a temporary restraining order ("TRO"), asking the Court to enjoin ABM from "further interfering with Cartessa's relationships with its customers by urging them to breach the contracts that Cartessa has arranged, stop credit card payments they have made, and pay ABM instead." (Doc. 14 at 2.) Cartessa also sought permission under Federal Rule of Civil Procedure 67 to deposit funds with the Court. (*Id.*) In its supporting memorandum, Cartessa stated that it "has calculated that the amount net of its commissions to which ABM is entitled is in fact $980,918.05—although this amount does not take into account the damages for breach of contract that ABM owes to Cartessa." (Doc. 14-1 at 8.) Cartessa explained that it had received these funds from "recent transactions" in which customers had evidently paid it rather than paying ABM directly. (*Id.* at 7.) Cartessa sought leave under Rule 67 to "deposit a portion of the funds for 'safekeeping' until Cartessa's claims are adjudicated." (*Id.* at 15.)

On February 5, 2020, ABM filed a response opposing Cartessa's motion. (Doc. 18.)

On February 6, 2020, the Court held oral argument on, and then orally denied, Cartessa's motion. (Doc. 19.) During the hearing, counsel for Cartessa did not dispute ABM's entitlement to the $980,918.05 figure that was referenced in Cartessa's memorandum but argued that "there are offsets and [the funds] should be paid into the court to preserve those funds." (Doc. 44-1 at 7.)

On February 11, 2020, ABM filed an answer to the FAC and filed a counterclaim against Cartessa. (Doc. 20.)

On March 3, 2020, Cartessa filed an answer to ABM's counterclaim. (Doc. 27.)

On March 25, 2020, ABM filed its motion to order the transfer of undisputed funds and demonstration devices. (Doc. 44.)

On April 8, 2020, Cartessa filed a response. (Doc. 47.)

On April 14, 2020, ABM filed a reply. (Doc. 49.)

**DISCUSSION**

A.     The Parties' Arguments

In its motion, ABM seeks an order requiring Cartessa to return "(i) the undisputed $980,918.05 in customer payments that rightfully belong to ABM; (ii) the 25 demonstration devices undisputedly owned by ABM and provided to Cartessa only as part of the Agreement; and (iii) the 1 new device that ABM shipped to a customer that was removed by Cartessa without authorization." (Doc. 44 at 1-2.) In support of this request, ABM contends that Cartessa admitted during the TRO hearing that it owed $980.918.05 to ABM and that ABM was entitled to the return of the demonstration devices. (*Id*. at 2.) However, ABM's motion does not cite any cases supporting an entitlement to relief under these circumstances and does not even delineate, with clarity, the Federal Rule of Civil Procedure under which it is seeking relief—the sole reference to any Federal Rule is a statement in the very first sentence that the motion is being brought "pursuant to Federal Rule of Civil Procedure 7(b)." (*Id.* at 1.)

In response, Cartessa argues that ABM's motion is effectively a premature and procedurally defective summary judgment motion and insists that ABM has mischaracterized its supposed admissions during the TRO hearing. (Doc. 47 at 4, 17.)

In reply, ABM clarifies that it "is not seeking an adjudication of any issues" and "did not file an MSJ." (Doc. 49 at 6.) Additionally, ABM asserts that "Rule 7b is appropriate under the circumstances" and faults Cartessa for "not disclos[ing] any rule or case law that holds that ABM's Motion is improper." (*Id.* at 5.)

B.     Analysis

ABM's motion will be denied. Rule 7(b)(1)(B) of the Federal Rules of Civil Procedure provides that "[a] request for a court order must be made by motion" and that "[t]he motion must . . . state with particularity the grounds for seeking the order." Here, ABM hasn't come close to satisfying Rule 7(b)(1)(B)'s particularity requirement. Although ABM's overarching point—an opposing party shouldn't be allowed to concede that it owes $980,000 yet still refuse to hand over the money—has intuitive appeal, ABM

has not even attempted to identify a legal rule or doctrine that would empower a court to address this circumstance by issuing a You-Must-Return-The-Money-Right-Now order during the early stages of a lawsuit.

Indeed, ABM's reply raises more questions than it answers. In response to Cartessa's supposition that the motion must be some variant of a motion for summary judgment under Rule 56, ABM clarifies that it is not seeking summary judgment and not seeking an adjudication on the merits. Conspicuously absent from this clarification, however, is any specification of the rule or doctrine that would authorize the relief ABM seeks.

Courts have not hesitated to deny motions under similar circumstances. In *Sinclair v. City of Grandview*, 2013 WL 1497358 (E.D. Wash. 2013), the defendant moved for summary judgment, but the motion consisted only of "a declaration supporting a set of facts." *Id.* at *1. The court concluded this "motion does not comply with Federal Rule of Civil Procedure 7(b)" because the defendant "has not provided adequate legal argument" and "has not explained how the law would apply to the facts." *Id.* Similarly, in *Frees v. Duby*, 2010 WL 4923535 (W.D. Mich. 2010), the defendant filed a motion that "did not invoke Rule 12(b)(6), or for that matter, any other rule of civil procedure." *Id.* at *2. Accordingly, the court denied the motion for failure to comply with Rule 7(b)(1), emphasizing that "[t]he Court of Appeals would not likely tolerate defendants' . . . exceedingly sloppy practice, in which the [opposing party] is left to guess whether the defendants are making a Rule 12(b)(6) challenge to the adequacy of his complaint or whether, in the summary judgment context, they are demanding that he come forward with evidence supporting his claims." *Id.* And again, in *Wonderland Nurserygoods Co., Ltd. v. Thorley Indus., LLC*, 2013 WL 2471801 (W.D. Pa. 2013), the plaintiff filed a motion to strike the defendant's expert but did "not state with particularity the Federal Rule that it seeks to invoke" and did "not proffer[] any Federal Rule, Local Rule, or case precedent to demonstrate that this Court has the power to do so." *Id.* at *1, *4. The court thus denied the motion without prejudice, stating that Rule 7(b)(1) requires a movant to state with

particularity the grounds upon which the motion is being made. *Id.* at *1.[1]

To be sure, 7(b)(1)'s "particularity requirement should not be applied in an overly technical fashion when the purpose behind the rule is not jeopardized." *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 793 (8th Cir. 2003). But here, ABM's failure to specify the legal doctrine on which it is relying is not some technical deficiency—it has caused the parties to talk past each other in their briefs and caused the Court to guess as to which legal framework to apply. For example, if ABM were seeking an injunction, it would need to show, *inter alia*, that "it does not have an adequate remedy at law." *N. California Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306, 1306 (1984). And if ABM were seeking a provisional remedy under Rule 64 to "secure satisfaction of the potential judgment," it would need to identify and discuss relevant state law. *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1064 n.13 (9th Cir. 1991) ("Under [Rule 64], state law controls the availability of provisional remedies to secure satisfaction of judgments in a federal district court.").

Accordingly, **IT IS ORDERED** that ABM's Rule 7(b) motion to compel transfer of undisputed funds and demonstration devices (Doc. 44) is **denied**.

Dated this 23rd day of April, 2020.

Dominic W. Lanza
United States District Judge

---

[1] *See also Korff v. City of Phoenix*, 2016 WL 1242523, *4 (D. Ariz. 2016) (denying motion to strike, based on non-compliance with Rule 7(b)(1), because it "not supported by citation to statute, rule, or case law" and "merely says, 'What is good for the goose . . . .'"); *Rivera v. Berg Elec. Corp.*, 2010 WL 3002000, *1 (D. Nev. 2010) (motion was deficient under Rule 7(b)(1) because "[t]he court cannot tell whether plaintiff means to bring a Motion to Compel pursuant to Rule 37 or whether he is demanding return of papers and other information" and "[i]t is not the role of the court to guess at what a party requests").