**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cartessa Aesthetics LLC, | No. CV-19-05827-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Aesthetics Biomedical Incorporated, | |
| Defendant. | |
| Aesthetics Biomedical Incorporated, | |
| Counter-Claimant, | |
| v. | |
| Cartessa Aesthetics LLC, | |
| Counter-Defendant. | |

Pending before the Court is Plaintiff/Counter-Defendant Cartessa Aesthetics LLC's ("Cartessa") motion to dismiss and/or strike certain counterclaims and an accounting request asserted by Defendant/Counter-Claimant Aesthetic Biomedical, Inc. ("ABM"). (Doc. 89.) For the following reasons, the motion is denied.

## PROCEDURAL HISTORY

On December 16, 2019, Cartessa initiated this action. (Doc. 1.)

On January 14, 2020, Cartessa filed a first amended complaint ("FAC"). (Doc. 9.)

On February 11, 2020, ABM filed an answer to the FAC. (Doc. 20.) In the same

document, ABM asserted the following seven counterclaims against Cartessa: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) tortious interference with contractual agreements; (4) negligent/fraudulent misrepresentation; (5) conversion of customer payments and Vivace units; (6) replevin; and (7) defamation. (*Id.* at 20-25.)[1]

On March 3, 2020, Cartessa filed an answer to ABM's counterclaims. (Doc. 27.)

On March 12, 2020, the parties filed the Rule 26(f) report. (Doc. 34.) Among other things, the parties agreed that July 31, 2020 would be an acceptable deadline for the completion of fact discovery. (*Id.* at 2, 8.)

On June 18, 2020, the parties jointly requested a referral to a magistrate judge for a settlement conference. (Doc. 57.) This request was granted (Doc. 58) but the parties were unable to reach a settlement during the resulting settlement conference (Doc. 64).

On August 12, 2020, the parties filed a joint status report that, among other things, included new proposed case management deadlines. (Docs. 67, 67-1.)

On August 13, 2020, the Court issued an order accepting the parties' proposed dates. (Doc. 69.) Although the Court did not alter the deadline for amending the pleadings (because it had already expired and the parties did not request a retroactive extension), the Court extended the deadline for final supplementation of MIDP responses and the completion of fact discovery (except for depositions) to September 30, 2020 and the deadline for completing fact-witness depositions to December 11, 2020. (*Id.*)

On September 24, 2020—that is, six days before the deadline for completing fact discovery—the parties filed a joint stipulation for leave to allow amendments to the pleadings. (Doc. 73.) Upon receipt of this stipulation, the Court clarified that leave of court was unnecessary under Local Rule 15.1(b) in light of the parties' written consent to the dueling amendments. (Doc. 74.)

On September 28, 2020, pursuant to the parties' stipulation, Cartessa filed its second

---

[1] This pleading also includes what purports to be an additional counterclaim against Cartessa for "injunctive relief" (Doc. 20 at 27-28), but this is best categorized as a request for a particular form of relief (as opposed to an independent theory on which liability might be premised).

amended complaint ("SAC"). (Doc. 80.)

On October 15, 2020, ABM filed its answer to the SAC. (Doc. 88.) In the same document, and pursuant to the parties' stipulation, ABM also asserted three new counterclaims (with the new count numbers denoted in parentheses): (8) unfair competition under the Lanham Act, 18 U.S.C. § 1125; (9) false advertising under the Lanham Act, 18 U.S.C. § 1125; (10) tortious interference with ABM's contractual agreement with SheNB. (Doc. 85-1 at 54-58 [denoting changes in redline]; Doc. 88 at 33-38 [final version].) ABM also requested one additional form of relief that it hadn't requested in its initial set of counterclaims: a request for an accounting. (Doc. 85-1 at 36; Doc. 88 at 18.)

On October 26, 2020, Cartessa filed the pending motion to dismiss and/or strike certain counterclaims and the accounting request. (Doc. 89.)

On October 30, 2020, ABM moved to amend the scheduling order. (Doc. 90.)

On November 9, 2020, ABM filed a response to Cartessa's motion to dismiss and/or strike. (Doc. 97.)

On November 13, 2020, the Court issued an order granting ABM's motion to amend the scheduling order to the extent it sought a 90-day extension of "all non-expired deadlines." (Doc. 99.) In other words, this order extended the deadline for completing fact-witness depositions (from December 2020 to March 2021) but did not extend the already-expired deadline for all other forms of fact discovery. (*Id.*)

On November 16, 2020, Cartessa filed a reply in support of its motion to dismiss and/or strike. (Doc. 100.)[2]

**DISCUSSION**

Cartessa moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss ABM's fourth, eighth, ninth, and tenth counterclaims in full and to dismiss ABM's first, fifth, and sixth counterclaims in part. (Doc. 89.) Cartessa also moves to dismiss and/or "strike" ABM's request for an accounting. (*Id.*) In response, ABM defends the sufficiency of all of its challenged counterclaims and its accounting request and

---

[2] Cartessa's request for oral argument is denied because the issues are fully briefed and oral argument would not assist the Court's decisional process. *See* LRCiv 7.2(f).

- 3 -

additionally argues that Cartessa's motion should be denied in full or in part for the procedural reasons of (1) non-compliance with Local Rule 12.1(c) and (2) untimeliness. (Doc. 97.)

I. <u>Local Rule 12.1(c)</u>

Local Rule of Civil Procedure 12.1(c) provides that "[n]o motion to dismiss for failure to state a claim or counterclaim, pursuant to Federal Rule of Civil Procedure 12(b)(6), or motion for judgment on the pleadings on a claim or counterclaim, pursuant to Federal Rule of Civil Procedure 12(c), will be considered or decided unless the moving party includes a certification that, before filing the motion, the movant notified the opposing party of the issues asserted in the motion and the parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party." *Id.* The rule further provides that "[t]he movant may comply with this rule through personal, telephonic, or written notice of the issues that it intends to assert in a motion." *Id.* "A motion that does not contain the required certification may be stricken summarily." *Id.*

Here, Cartessa attempted to comply with Local Rule 12.1(c) by including a footnote in its motion stating that it "notified ABM of the issues asserted herein at a telephone conference on October 23, 2020 and by letter dated August 14, 2020" and that "[t]he parties were unable to agree that the pleading was curable by amendment." (Doc. 89 at 1 n.2.) Cartessa also included, as an attachment, the August 14, 2020 letter. (Doc. 89-5.)

ABM challenges the sufficiency of Cartessa's meet-and-confer efforts. (Doc. 97 at 6-7.) As for the October 23, 2020 telephone conversation, ABM asserts that "Cartessa did not engage in a conversation with ABM to try and cure any part of the alleged deficiencies in ABM's pleadings by permissible amendment" and that the conversation consisted "solely of [Cartessa] informing ABM the Motion would be forthcoming on Monday, October 26, 2020." (*Id.*) As for the August 14, 2020 letter, ABM states that it was a Rule 11 letter, didn't mention the possibility of a motion to dismiss, and only discussed the alleged insufficiency of ABM's first counterclaim (without addressing any of the other

- 4 -

counterclaims or the accounting request). (*Id.*)

In reply, Cartessa seems to acknowledge the accuracy of ABM's characterization of the telephone call on October 23, 2020—that is, there was no substantive conversation about whether the alleged deficiencies could be cured by amendment—but argues its conferral efforts were nevertheless sufficient under Local Rule 12.1(c) because it informed ABM of its intent to file a motion to dismiss and disclosed the basis for its anticipated motion. (Doc. 100 at 3.) Cartessa also includes a supplemental certificate of conferral in which its counsel avows that, during the October 23, 2020 telephone call, "[c]ounsel for ABM raised no objection to the Motion and did not request an opportunity to amend the counterclaims." (Doc. 100-1 at 2.) In a related vein, Cartessa contends that ABM's complaints about non-compliance with Local Rule 12.1(c) are disingenuous because "ABM's Opposition does not seek permission to amend its Counterclaims." (Doc. 100 at 3.) Finally, as for the August 14, 2020 letter, Cartessa acknowledges that it was a Rule 11 letter directed at only one of the counterclaims but argues that, because ABM subsequently wrote a letter refusing to withdraw that counterclaim, this course of dealing shows that the parties were at an impasse over the possibility of amendment. (*Id.*)

"The Court is ordinarily a stickler for compliance with Local Rule 12.1(c)." *Leibel v. City of Buckeye*, 2020 WL 516671, *2 (D. Ariz. 2020). The purpose of Local Rule 12.1(c) is to avoid unnecessary motions practice, which squanders judicial resources and undermines Rule 1's objective of securing "the just, speedy, and inexpensive determination of every action and proceeding." *See also Wine Educ. Council v. Ariz. Rangers*, 2020 WL 7352632, *8 (D. Ariz. 2020) (Local Rule 12.1(c) is intended "to promote communication and an attempted resolution by opposing counsel prior to parties filing motions to dismiss"). To that end, Local Rule 12.1(c) provides that a party contemplating filing a motion to dismiss under Rule 12(b)(6) or a motion for judgment on the pleadings under Rule 12(c) must first engage in a meaningful conversation with its adversary about whether the perceived deficiencies might be cured by amendment. If so, the parties can avoid motions practice, and its attendant costs and delays, by simply agreeing to the amendment.

Although such agreements may be rare in practice, it is still incumbent upon the parties to confer with each other in a sincere attempt to find common ground.

That didn't happen here. From the parties' briefs and certificates, the Court can surmise that Cartessa's counsel simply mentioned in passing, during a Friday phone call with ABM's counsel about an unrelated topic, that Cartessa was going to file a motion to dismiss, which Cartessa proceeded to file the very next business day (the ensuing Monday). It is hard to understand how such a perfunctory gesture could be deemed compliant with Local Rule 12.1(c). *Cf. Fletcher v. U-Haul Co. of Ariz.*, 2008 WL 3843752, *2 (D. Ariz. 2008) (denying discovery motion based on non-compliance with Rule 37's meet-and-confer requirement, where the movant provided notice of its intent to seek relief via a cursory letter sent only three days before filing its motion, because "[t]o accept the utterly perfunctory effort made here as satisfaction of the 'meet and confer' requirements . . . would do a disservice to the interests of the court and litigants generally"); *Nev. Power Co. v. Monsanto Co.*, 151 F.R.D. 118, 120 (D. Nev. 1993) ("Inherent in the [meet-and-confer rule's] language, and essential to the Rule's proper operation, is the requirement that parties treat the informal negotiation process as a substitute for, and not simply a formalistic prerequisite to, judicial resolution of discovery disputes. To that end, the parties must present to each other the merits of their respective positions with the same candor, specificity, and support during informal negotiations as during the briefing of discovery motions. Only after all the cards have been laid on the table, and a party has meaningfully assessed the relative strengths and weaknesses of its position in light of all available information, can there be a 'sincere effort' to resolve the matter.").

The Court acknowledges that Cartessa states, in its supplemental certificate of conferral, that ABM's counsel didn't affirmatively bring up the topic of potential amendments during the October 23, 2020 phone call after learning about Cartessa's plan to file a motion. Meeting-and-conferring is a two-way street, and the better practice would have been for ABM to engage with Cartessa about the possibility of amendment after the issue came to the fore. Nevertheless, Local Rule 12.1(c) places the burden on the movant

to certify that "the parties were unable to agree that the pleading was curable in any part by a permissible amendment" and here, because neither side engaged in any discussion of that topic during the October 23, 2020 phone call, Cartessa cannot credibly make this certification. Additionally, Cartessa is incorrect in its assertion that ABM's invocation of Local Rule 12.1(c) must be disingenuous because "ABM's Opposition does not seek permission to amend its Counterclaims." (Doc. 100 at 3.) In fact, ABM's response brief specifically requests leave to amend in the event the Court disagrees with ABM's arguments about the sufficiency of its counterclaims. (Doc. 97 at 5 ["Should the court disagree ABM requests leave to amend."]; *id.* at 19 [requesting that the Court deny the motion or, "[i]n the alternative . . . allow it to amend its First Amended Counterclaim"].) The presence of this request amplifies why Cartessa needed to do a better job of conferring with ABM before filing its motion.

For these reasons, the Court concludes—with one exception noted below—that Cartessa did not comply with Local Rule 12.1(c)'s requirements in this case. Under Local Rule 12.1(c), a court may "summarily" strike or deny a Rule 12(b)(6) or Rule 12(c) motion based on such non-compliance and the Court chooses, in its discretion, to employ that remedy here.

The exception is Cartessa's request for partial dismissal of ABM's first counterclaim. Cartessa wrote a letter to ABM in August 2020 that explained, in extensive detail, why Cartessa viewed the challenged portion of this counterclaim as frivolous and warranting sanctions under Rule 11 (Doc. 89-5) and ABM responded by writing a lengthy letter in September 2020 explaining why it was refusing to withdraw the counterclaim (Doc. 89-6). Under these circumstances, further meeting-and-conferring about this particular counterclaim would have been pointless. Accordingly, the Court will not deny Cartessa's motion to dismiss this particular counterclaim based on non-compliance with Local Rule 12.1(c).

II. Timeliness

ABM identifies a separate procedural reason why Cartessa's motion to dismiss its

first counterclaim should be denied—untimeliness. (Doc. 97 at 12-14.) ABM notes that this counterclaim appeared in the initial set of counterclaims it filed in February 2020, that Cartessa chose to file an answer to those counterclaims in March 2020 (without filing a motion to dismiss), and that the original counterclaims remained unchanged when it filed its amended set of counterclaims in October 2020 (which merely added three new counterclaims). (*Id.*) ABM contends that, under these circumstances, Cartessa was only entitled to invoke Rule 12(b)(6) to seek dismissal of the three new counterclaims and was barred from seeking dismissal of the earlier-asserted counterclaims. (*Id.*) In reply, Cartessa doesn't dispute that these timing issues preclude it from seeking dismissal of the first counterclaim under Rule 12(b)(6) but argues that the Court may convert its Rule 12(b)(6) motion into a motion for judgment on the pleadings under Rule 12(c), which is governed by the same substantive standards as a Rule 12(b)(6) motion but isn't subject to the same timing and forfeiture requirements. (Doc. 100 at 8-9.)

On the one hand, ABM is correct that Cartessa's request for dismissal of the first counterclaim under Rule 12(b)(6) is untimely. Cartessa filed an answer to the first counterclaim in March 2020, some eight months before it filed its pending Rule 12(b)(6) motion to dismiss that very same counterclaim. This approach is verboten under Rule 12(b), which provides that "[a] motion asserting any of [the Rule 12(b)] defenses must be made before pleading if a responsive pleading is allowed." Moreover, "[t]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in a timely fashion prior to the amendment of the pleading." *Jaeger v. Howmedia Osteonics Corp.*, 2016 WL 520985, *4 (N.D. Cal. 2016) (internal quotation marks omitted).

On the other hand, it is well recognized that a district court may treat an untimely motion to dismiss under Rule 12(b)(6) as a motion for judgment on the pleadings under Rule 12(c). *See, e.g., Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004) ("A Rule 12(b)(6) motion must be made *before* the responsive pleading. Here, the Defendants filed their motion to dismiss *after* filing their answer. Thus, the motion should

have been treated as a motion for judgment on the pleadings, pursuant to Rule 12(c) or 12(h)(2).") (citation omitted); *Lu v. Menino*, 98 F. Supp. 3d 85, 93 (D. Mass. 2015) ("[N]umerous courts consider a Rule 12(b)(6) motion on the merits or construe it as a Rule 12(c) motion even though the defendant filed the Rule 12(b)(6) motion after filing an answer."). The Ninth Circuit has lauded the "practical wisdom" of this approach, which promotes efficiency. *Cf. In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 317-19 (9th Cir. 2017). *See also* 1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 12, at 330 (2018) ("[L]awyers often file 'Rule 12(b)(6)' motions after answering. When this occurs, the sensible path for the court to take is to treat the motion as having been made under Rule 12(c).").

The Court's only hesitation in accepting Cartessa's conversion request is that, although Rule 12(c) motions aren't subject to the same timing requirements as Rule 12(b)(6) motions, they still are subject to *some* limits. The First Circuit has suggested that "a district court should hesitate to entertain a Rule 12(c) motion that asserts a complaint's failure to satisfy the plausibility requirement" if the motion is filed after "the parties have invested substantial resources in discovery," due to the "obvious anomaly" that arises from reviewing the sufficiency of the complaint "on the basis of the complaint alone" while "[i]gnoring the entire panoply of facts developed during discovery." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 46 (1st Cir. 2012). That is arguably the situation here—Cartessa filed its motion in October 2020, several weeks after the fact discovery deadline had expired.

Nevertheless, the Court's timeliness analysis is ultimately governed by the text of Rule 12(c), which provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Because no trial date has been set in this matter, there is no risk that converting Cartessa's Rule 12(b)(6) motion into a Rule 12(c) motion will delay the trial.

III.     Rule 12(c) Challenge To Counterclaim One

    A.     **Legal Standard**

The "[a]nalysis under Rule 12(c) is substantially identical to analysis under Rule

12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *United States v. Chavez*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks omitted).

Thus, to survive a motion for judgment on the pleadings under Rule 12(c), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144-45 (9th Cir. 2013).

Legal conclusions couched as factual allegations are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678-79 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Taking as true all of the well-pleaded factual allegations, there must be "more than a sheer possibility" that a defendant is liable for the claim to be "plausible." *Id.* at 678. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015).

B.   **Summary Of Counterclaim One**

ABM alleges that it is the exclusive North American distributor of the Vivace microneedling device, which is manufactured in Korea, and that it entered into a contract with Cartessa in February 2017 under which Cartessa agreed to serve as its distributor ("the Agreement"). (Doc. 88 at 17-18 ¶¶ 6-10.) In general, the Agreement gave Cartessa the right to distribute specified Vivace products "on an exclusive basis" in a specified territory

(initially, New York, Connecticut, and Florida).  (Doc. 89-2 at 3 ¶ 1.1, 11.)[3]  The Agreement contemplated that Cartessa would solicit orders from customers in this territory and then forward those orders to ABM, which would make a final determination as to whether to accept them.  (*Id.* at 4 ¶ 3.2.)  For accepted orders, the Agreement provided that Cartessa "shall direct its Customers to make invoice payments directly to ABM.  If [Cartessa] receives any Customer payments, it shall immediately forward such payments to ABM."  (*Id.* at 4 ¶ 3.3)  ABM would, in turn, provide "Compensation" to Cartessa in the form of "the difference of the Transfer Price and the Sale price . . . after deductions for clinical in-services, referral fees, and reasonable marketing expenses" and/or "the commission amount list in" a table appended to the Agreement.  (*Id.* at 3 ¶ 2.1.)

As relevant here, the Agreement also carved out an exception to Cartessa's otherwise exclusive right to make sales in its specified territory.  Specifically, "ABM retain[ed] the exclusive right to sell its Products to Corporate Groups," which were defined as "a Customer that consists of a group of five or more physicians who work for the same entity, and any entity with multiple locations, including franchises."  (*Id.* at 2, 14 ¶ 3.1.)  The Agreement further provided that "[n]o compensation or commission will be paid to [Cartessa] for Corporate Group sales that fall within [its] territory, except that [Cartessa] will receive a lead generation fee for referring these leads to ABM."  (*Id.* at 14 ¶ 3.1.)

In Counterclaim One, ABM alleges that Cartessa breached the Agreement in six different ways.  (Doc. 88 at 28 ¶ 83.)  One of those theories of breach—the only one at issue here—is that Cartessa breached the provision of the Agreement giving ABM the "exclusive right" to makes sales to Corporate Groups.  (*Id.* at 18-19 ¶¶ 14-20, 28 ¶ 83(a).)  Specifically, ABM alleges that Cartessa sold at least 57 Vivace devices to Corporate Groups between 2017 and 2019, causing ABM to suffer at least $1,734,695 in damages.  (*Id.*)

---

[3] Cartessa attached a copy of the Agreement to its motion (Doc. 89-2) and argues that, because Counterclaim One expressly refers to the Agreement and incorporates it by reference, the Court may consider the Agreement without converting its motion into a summary judgment motion.  (Doc. 89 at 14 n.10.)  The Court agrees.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

C.     **The Parties' Arguments**

Cartessa moves to dismiss this theory of liability for two reasons. (Doc. 89 at 13-15.) First, Cartessa argues that because its "alleged sales to Corporate Group accounts . . . [were] clearly contemplated under the Agreement," ABM cannot establish a breach of the Agreement. (*Id.*) Cartessa elaborates that, because the Agreement contemplated that ABM would pay "lead generation fees" to Cartessa for sales made to Corporate Groups, this shows that the Agreement authorized Cartessa to make such sales. (*Id.*) Second, Cartessa argues that ABM "could not have suffered any damages" related to the Corporate Group sales because those sales resulted in ABM receiving $1,734,695 in "revenue, which ABM would not have received but for Cartessa's efforts. ABM reviewed and accept the sales, shipped the devices to the customers, received $1,734,695.48, paid Cartessa commissions, and retained the remainder as profit." (*Id.*)

ABM disagrees. (Doc. 97 at 16-17.) ABM contends that the contractual language at issue makes "clear" that Cartessa wasn't allowed to make sales to Corporate Groups, so the allegation that Cartessa made such sales is sufficient to state a claim. (*Id.*)[4] ABM further contends that although it made some profit from Cartessa's "improper sale[s] to Corporate Groups," it "lost additional profit—the commission paid to Cartessa for each sale—it otherwise would have received if the Agreement was not breached and Cartessa had passed the lead to ABM as required in the contract." (*Id.*)

In reply, Cartessa argues that the Agreement cannot be construed as precluding it from making sales to Corporate Groups because "[n]ot having the exclusive right to sell to Corporate Groups does not mean Cartessa had no right to sell to those groups." (Doc. 100 at 10-11, emphases omitted.) As for the damages-related issue, Cartessa does not directly address ABM's point about lost profits but notes that ABM "does not allege that Cartessa misrepresented the nature of these sales or otherwise tricked ABM into exercising its

---

[4]     ABM analyzes this issue under the standard applicable to a motion for summary judgment under Rule 56. (Doc. 97 at 16-17.) As discussed above, the Court analyzes Cartessa's motion to dismiss Counterclaim One under the standard applicable to a motion for judgment on the pleadings under Rule 12(c). Accordingly, the Court construes ABM's arguments as defending the sufficiency of its claim under Rule 12(c).

discretion to pay Cartessa commissions." (*Id.*)

D. **Analysis**

To prevail on a breach-of-contract claim under Arizona law, "the plaintiff has the burden of proving the existence of a contract, breach of the contract, and resulting damages." *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004). As noted, Cartessa challenges only the second (breach) and third (damages) elements.

As for breach, "courts have granted motions to dismiss on contract claims where it is clear from the unambiguous terms of the contract that the alleged conduct by the defendant does not constitute a breach of contract." *Mieuli v. DeBartolo*, 2001 WL 777447, \*5 (N.D. Cal. 2001). In contrast, "[i]f a contract is ambiguous, it presents a question of fact inappropriate for resolution on a motion to dismiss." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1118 (9th Cir. 2018). Here, the Agreement is not a model of clarity as to whether it affirmatively prohibited Cartessa from making sales to Corporate Groups. Although Cartessa may be able to advance plausible arguments in support of its position that such sales weren't forbidden, ABM's contrary arguments are plausible, too—why else would the Agreement specifically state that ABM "retain[ed] the exclusive right to sell its Products to Corporate Groups"? Because the contractual language does not unambiguously support Cartessa's proffered interpretation, Cartessa is not entitled to dismissal under Rule 12(c). *See, e.g., Res. Recovery Corp. v. Inductance Energy Corp.*, 2020 WL 6149844, \*6 (D. Ariz. 2020) (denying motion to dismiss breach-of-contract claim because "the presence of [contractual] ambiguity precludes dismissal at this stage"); *Raygarr LLC v. Employers Mut. Cas. Co.*, 2018 WL 4207998, \*4 (D. Ariz. 2018) ("To the extent the underlying terms of the insurance policies at issue are ambiguous, the Court declines to reach any conclusive interpretation at this stage of the proceedings. The Court merely finds that Raygarr has stated a plausible claim for breach of contract. EMC's motion to dismiss Raygarr's breach-of-contract claim will be denied.").

Cartessa's damages-related arguments fare no better. ABM's theory is that it would have earned more money by making sales directly to the Corporate Groups than it actually

earned from the allegedly improper sales that Cartessa made to the Corporate Groups (because, had it made the sales directly, it wouldn't have paid a commission to Cartessa). In other words, ABM's theory is that, even though it made *some* profit based on the challenged transactions, it still missed out on some additional profit to which it was entitled under the Agreement. Although the parties have not briefed this issue in any depth, this appears to be a valid theory of recovery in a contract action under Arizona law. *See, e.g., A.R.A. Mfg. Co. v. Pierce*, 341 P.2d 928, 932 (Ariz. 1959) ("The familiar aim of compensatory contract damages, the computation of which is hardly an exact science, is to yield the net amount of the losses caused and the gains prevented by the breach of contract, i.e., [t]he expected additions to the plaintiff's wealth and the actually resulting subtractions therefrom. To recover for gains prevented, [plaintiffs] were entitled to have the jury consider any loss of profits shown . . . .") (citations and quotation marks omitted). Thus, ABM has plausibly stated a claim for relief.[5]

IV. ABM's Request For An Accounting

A. **Cartessa's Challenge**

One last issue to address is Cartessa's challenge to ABM's request for an accounting. In its amended counterclaim, ABM seeks an accounting of (1) "all Cartessa's sales during the term of the Agreement to determine what other such sales have occurred," (2) "the sales of all of Cartessa's Virtue since conception of its contract with SheNB in December 2019," and (3) "all demonstration Cartessa has conducted for the Virtue since inception of its contract with SheNB in December 2019." (Doc. 88 at 18 ¶¶ 11-13.) Cartessa, in turn, asks the Court "to dismiss ABM's requests for an accounting" and/or to "strike the requests for accounting." (Doc. 89 at 1, 17.)

Based on this nomenclature, it is unclear whether Cartessa seeks the dismissal of ABM's accounting request under Rule 12(b)(6) or seeks to strike ABM's accounting

---

[5] Whether ABM will actually be able to prove that, but for Cartessa's conduct, it would have made the same 57 sales to Corporate Groups is a question for a different day. Additionally, the parties' briefing doesn't address why ABM chose to pay commissions to Cartessa for the challenged sales if, under ABM's interpretation of the Agreement, Cartessa wasn't entitled to a commission for those sales. But because that issue is not properly before the Court at this time, it does not provide a basis for dismissal under Rule 12(c).

request under Rule 12(f). Adding to the confusion, Cartessa appears to challenge both the sufficiency of ABM's allegations related to the request for an accounting, which suggests that Cartessa is requesting dismissal under Rule 12(b)(6), and their relevance, which suggests that Cartessa is requesting that an "immaterial" or "impertinent" matter be stricken under Rule 12(f). (Doc. 89 at 16-17; Doc. 100 at 11.)

Despite this lack of clarity, the Court construes Cartessa's motion as requesting that the Court strike the accounting request under Rule 12(f). In various portions of its brief, Cartessa offsets its request to strike the accounting request from its other requests for dismissal, which tends to indicate that it viewed its basis for striking the accounting request as separate from its basis for dismissing ABM's counterclaims. (*See, e.g.*, Doc. 89 at 17 ["[I]t is respectfully requested that the Court grant Cartessa's motion to dismiss ABM's fourth, eighth, ninth, and tenth causes of action, and portions of the first, fifth, and sixth causes of action, and strike the requests for accounting."]; Doc. 100 at 11.) Furthermore, ABM construed Cartessa's motion as seeking to have the accounting request struck, arguing that the "accounting . . . goes directly to Cartessa's claimed damages" and to ABM's "claims that implicate Cartessa in inappropriate sales of purchased demo units as well as consumables." (Doc. 97 at 19.) Accordingly, the Court analyzes Cartessa's request under Rule 12(f) (which also means that the request is not subject to forfeiture based on Cartessa's non-compliance with Local Rule 12.1(c)).

B. **Legal Standard**

A court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A statement is not immaterial if it "relates directly to the plaintiff's underlying claim for relief." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). A statement is not impertinent if it "pertains directly to the harm being alleged." *Id.* Rule 12(f) is not a vehicle to challenge the legal sufficiency of claims or allegations. *Id.*

Motions to strike under Rule 12(f) are "viewed with disfavor and are not frequently granted." *Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d

1045, 1050 (6th Cir. 2015).  Some courts have concluded that "[a] motion to strike should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation.  If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion."  *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citations omitted).

### C. The Parties' Arguments

Cartessa argues that the accounting request should be stricken because it "concern[s] Cartessa's sales or demonstrations of *Virtue*, or any other device or product that Cartessa sells without ABM's involvement" and is thus irrelevant.  (Doc. 89 at 16-17.)  Cartessa further argues that ABM "has not alleged that it has any right with respect to Virtue, or alleged any facts about any other devices or products sold by Cartessa."  (*Id.* at 17.)  Last, Cartessa argues that, to the extent ABM seeks an accounting of "Cartessa's sales of *Vivace* under the Distribution Agreement with ABM, ABM already has all such information."  (*Id.*)

ABM responds that its request for an accounting of Cartessa's sales of Virtue is relevant because "Cartessa['s] claims, including but not limited to tortious interference and libel . . . must show damages," so an "accounting of Virtue sales goes directly to Cartessa's claimed damages."  (Doc. 97 at 19.)  With respect to ABM's request for an accounting of Cartessa's sales of Vivace, ABM argues that its request is relevant because "ABM alleged claims that implicate Cartessa in inappropriate sales of purchased demo units as well as consumables."  (*Id.*)  ABM further argues that, "pursuant to the MIDP Cartessa should have disclosed this information already" and indicates that it will be submitting a discovery dispute on this question.  (*Id.*)

Cartessa replies that "ABM's request for an accounting for all Cartessa's sales and demonstrations of *Virtue* is unrelated to ABM's Counterclaims" and that "ABM fails to explain how an accounting for all Cartessa's sales and demonstrations of *Vivace* is relevant to any party's damages."  (Doc. 100 at 11.)

…

D. **Analysis**

The Court is not prepared on this record to conclude that ABM's accounting request has *no* bearing on the litigation. Cartessa does not dispute that its sales and demonstrations of Virtue are relevant to its claimed damages. And, although Cartessa argues that "'purchased demo units' is not even mentioned in the Counterclaims," Cartessa does not appear to dispute that sales and demonstrations of Vivace are relevant to "inappropriate sales of . . . consumables." Considering the disfavor with which courts view motions to strike, Cartessa's motion to strike ABM's accounting request is denied. *Platte Anchor Bolt*, 352 F. Supp. 2d at 1057.

Accordingly, **IT IS ORDERED** that Cartessa's motion to dismiss and/or strike (Doc. 89) is **denied**.

Dated this 1st day of March, 2021.

Dominic W. Lanza
United States District Judge