WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cartessa Aesthetics LLC, | No. CV-19-05827-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Aesthetics Biomedical Incorporated, | |
| Defendant. | |
| | |
| Aesthetics Biomedical Incorporated, | |
| Counter-Claimant, | |
| v. | |
| Cartessa Aesthetics LLC | |
| Counter-Defendant. | |

Pending before the Court is Plaintiff/Counter-Defendant Cartessa Aesthetics LLC's ("Cartessa") motion to compel Defendant/Counter-Claimant Aesthetic Biomedical, Inc. ("ABM") to disclose certain financial records. (Doc. 105.) For the following reasons, the motion is granted.

**RELEVANT PROCEDURAL HISTORY**

On December 16, 2019, Cartessa initiated this action. (Doc. 1.)

On January 14, 2020, Cartessa filed a first amended complaint ("FAC"). (Doc. 9.) In a nutshell, Cartessa alleges that the parties entered into a contract ("the Agreement") in

February 2017 under which Cartessa obtained the exclusive right to sell certain products (including the "Vivace" micro-needling device) in certain territories and that ABM breached the Agreement in several ways, including by making sales (and by allowing other companies to make sales) within Cartessa's exclusive territories. (*Id.* ¶¶ 2, 4, 11.) Among other remedies, Cartessa seeks "an accounting to determine the true extent of its damages." (*Id.* ¶ 5. *See also* Doc. 80 [substantially similar allegations in second amended complaint].)

On February 11, 2020, ABM filed an answer to the FAC. (Doc. 20.) Additionally, ABM asserted various counterclaims against Cartessa, including a claim that Cartessa sold Vivace devices to one particular category of customers ("Corporate Groups") in violation of a provision within the Agreement giving ABM the exclusive right to make such sales. (*Id.* at 14 ¶¶ 13-19, 20 ¶ 65. *See also* Doc. 88 [substantially similar allegations in first amended counterclaim].)

On September 24, 2020, the parties filed a joint notice of discovery dispute. (Doc. 72.) In part, this dispute concerned the sufficiency of ABM's financial disclosures. Cartessa argued that "ABM has still to produce a complete record of its sales" while ABM argued that Cartessa hadn't properly requested such records or met and conferred about the issue. (*Id.* at 2-3.)

On September 25, 2020, the parties jointly requested that the Court issue its standard protective order. (Doc. 75.) That same day, the protective order was issued. (Doc. 77.)

On September 30, 2020, the Court held a telephonic hearing on the discovery dispute. (Doc. 83.) During the hearing, ABM's counsel represented that additional financial records were in the process of being disclosed.

On October 1, 2020, the Court issued an order resolving the discovery dispute. (Doc. 84.) As for the financial records, this order stated as follows: "The Court is hopeful that ABM included the requested information in the discovery materials it produced to Cartessa on September 30. If not, the parties are strongly encouraged to meet and confer. And if the parties remain at an impasse following those meet-and-confer efforts, Cartessa may renew its request for relief." (*Id.* at 4.)

On October 26, 2020, Cartessa filed a motion to dismiss some of ABM's counterclaims, including the counterclaim premised on Cartessa's sales to Corporate Groups. (Doc. 89.) Just recently, the Court denied this motion, explaining in relevant part that ABM's "lost profits" theory of damages as to this counterclaim appeared to be a valid theory under Arizona law. (Doc. 112 at 13-14.)

On January 29, 2021, Cartessa filed a letter renewing its earlier request to compel disclosure of ABM's financial records. (Doc. 103.) That same day, the Court struck the letter and authorized Cartessa to refile its request as a motion. (Doc. 104.)

On February 2, 2021, Cartessa filed the pending motion to compel. (Doc. 105.)

On February 19, 2021, after obtaining an extension (Docs. 108, 109), ABM filed a response. (Doc. 110.)

On February 26, 2021, Cartessa filed a reply. (Doc. 111.)[1]

**DISCUSSION**

I.   Legal Standard

Rule 37(a)(3)(B)(iv) of the Federal Rules of Civil Procedure provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" when the non-moving party "fails to produce documents . . . as requested under Rule 34."

Rule 26(b), in turn, defines the "Scope and Limits" of discovery. Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[2] Under Rule 26(b)(1), "[i]nformation . . . need not

---

[1]   Cartessa's request for oral argument is denied because the issues are fully briefed and oral argument would not assist the Court's decisional process. *See* LRCiv 7.2(f).

[2]   The current version of Rule 26(b)(1) was enacted in 2015. An earlier version provided that the requested material had to be "relevant to the subject matter involved in the pending action," and the Ninth Circuit has recognized that the change in 2015 (under

be admissible in evidence to be discoverable."

As for the burden of proof, "the party seeking to compel discovery has the initial burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)." *Doe v. Swift Transp. Co.*, 2015 WL 4307800, *1 (D. Ariz. 2015). "In turn, the party opposing discovery has the burden to demonstrate that discovery should not be allowed due to burden or cost and must explain and support its objections with competent evidence." *Id.*

II.   The Parties' Arguments

Cartessa moves to compel ABM to produce the following three categories of financial records for the "period of February 20, 2017 to December 20, 2019": (1) ABM's general ledger, exported directly from QuickBooks; (2) ABM's "Device Sales" spreadsheet; and (3) ABM's complete financial statements, including balance sheets showing the values attributed to demonstration devices. (Doc. 105 at 6 n.2, 12.) According to Cartessa, these materials are relevant because they will reveal (among other things) the overall number of Vivace devices sold during the relevant time period, which is a key figure for calculating the damages associated with both its breach-of-contract claim and ABM's breach-of-contract counterclaim. (*Id.* at 10-11.) Cartessa further contends that the production of these materials will not result in any burden (let alone undue burden) because ABM's accountant confirmed, during a recent deposition, that all three categories of documents "are already in existence and . . . maintain[ed] in the ordinary course of [ABM's] business." (*Id.* at 11-12.) Finally, Cartessa contends that it has a specific need for the requested materials because, although ABM produced certain other financial records (such as spreadsheets and Bates-stamped documents) during the discovery process,

---

which "the 'subject matter' reference [was] eliminated from the rule, and the matter sought must [now] be 'relevant to any party's claim or defense'") "was intended to restrict, not broaden, the scope of discovery." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020). *See also* Fed. R. Civ. P. 26, advisory committee's note to 2015 amendment (noting that Rule 26(b)(1) was amended in 1983 in part "to encourage judges to be more aggressive in identifying and discouraging discovery overuse," that the "clear focus of the 1983 provisions may have been softened, although inadvertently, by [subsequent] amendments," and that the 2015 amendment was intended in part to "restore[] the proportionality factors to their original place in defining the scope of discovery").

those documents were marred by omissions and inconsistencies. (*Id.* at 4-9.) As illustrative examples, Cartessa notes that (1) "the total sales amount recorded in" one document produced by ABM in July 2020 "differed significantly from the sales amount recorded in a prior document produced by ABM"; and (2) "[t]he 'Distributor Commission Reports' documents that ABM had produced [on September 30, 2020] did not match the 'Device Sales through Dec 20' document." (*Id.* at 5, 6.)

ABM opposes Cartessa's motion. (Doc. 110.) ABM argues that Cartessa's request is "overbroad" and "over-reaching" because the requested documents set forth all of its sales and financial transactions, yet Cartessa's claims in this case (and its counterclaims against Cartessa) only turn on a subset of those sales and financial transactions in a specified geographical area (whose scope changed over time, as the Agreement was amended). (*Id.* at 6-9.) ABM also contends, in a related vein, that because Cartessa is a "competitor," giving Cartessa "unfettered access" to such financial information "would cause irreparable harm." (*Id.* at 6, 10.) As for the alleged discrepancies and omissions in its earlier financial disclosures, ABM doesn't necessarily dispute that such issues existed but argues that it has "been cooperative throughout the discovery process" and has repeatedly provided explanations to Cartessa that account for the discrepancies and omissions. (*Id.* at 4-5, 9-10.) For example, ABM asserts that "some of the discrepancies between the 'Device Sales through Dec 20' did not match those recorded in ABM 'Transactional Report (ABM ESI 000306)[']' because 'on the date that the report was generated, there were several sales with pending financing. These sales did not close, and the invoices were later deleted and they never showed up in the Device Sales spreadsheet.'" (*Id.* at 4-5.) ABM concludes by asserting that Cartessa's motion can only be viewed as "a disingenuous attempt to distract this Court and . . . harass ABM and increase its costs in litigating this matter." (*Id.* at 10.)

In reply, Cartessa contends that the requested materials are relevant, that the burden under Rules 26 and 37 therefore shifts to ABM to demonstrate that production would be unfairly burdensome, and that ABM has failed to meet that burden because ABM makes

no argument at all about cost, provides only vague and undeveloped assertions about competitive harm, and fails to acknowledge that there is already a protective order in place in this action.  (Doc. 111 at 2-5.)  Cartessa also contends that ABM only attempted to address a handful of the many discrepancies and omissions raised in its motion and that it is, in any event, "entitled to discovery to verify ABM's unsupported" claims as to how the alleged discrepancies and omissions can be reconciled.  (*Id.* at 7-9.)  Finally, Cartessa accuses ABM of mischaracterizing the claims and theories of liability set out in the complaint.  (*Id.* at 9-11.)

III.   Analysis

The Court agrees, in the main, with the arguments set forth in Cartessa's motion and reply.  The three requested categories of financial documents—ABM's general ledger, "Device Sales" spreadsheet, and financial statements—are obviously relevant in this action in light of the parties' competing breach-of-contract claims, both of which turn at least in part on ABM's Vivace sales figures (which will be reflected in the requested documents).  ABM's decision to seek "lost profits" as part of its counterclaim against Cartessa also contributes to this relevance finding.  And even assuming that some (or much) of the information contained in the requested documents is irrelevant to the parties' specific claims and defenses in this action, this doesn't render the documents themselves irrelevant.

Given this backdrop, it was ABM's "burden to demonstrate that discovery should not be allowed due to burden or cost."  *Doe,* 2015 WL 4307800 at *1.  ABM has not met that burden.  It appears that the immediate cost of locating and producing the requested materials would be next to nothing—ABM conspicuously fails to address Cartessa's arguments on this point.  Also, although requiring one company to produce its financial records to a competitor could easily, under the right set of circumstances, result in other forms of impermissible harm and undue burden, Cartessa has not developed its arguments on these issues in any depth.  A bare assertion of competitive harm, bereft of specifics and unsupported by evidence, is insufficient.  Nor has ABM attempted to explain why the protective order (Doc. 77) would be inadequate to protect against the risk of such harm.

*See, e.g., Estate of Boles v. Nat. Heritage Realty, Inc.*, 2010 WL 2038611, *5-7 (N.D. Miss. 2010) (ordering production of general ledger, even though producing parties argued that "if the information contained in the general ledger is disseminated, their competitors will gain confidential and proprietary knowledge of its operations," in part because a protective order was in place). Finally, although ABM asserts that the requested records are redundant in light of its earlier financial disclosures, Cartessa has articulated specific, non-frivolous reasons to doubt the accuracy and comprehensiveness of those disclosures. Under these circumstances, the Court is satisfied that Cartessa's request for additional financial records, which ABM maintains in the ordinary course of business, isn't some fishing expedition but instead constitutes a legitimate attempt to verify the accuracy of ABM's proffered explanations for the seeming discrepancies in the earlier disclosures. *Cf. Banner Indus. of N.E., Inc., v. Wicks*, 2013 WL 5722812, *7 (N.D.N.Y. 2013) ("[I]n matters of discovery, the adage of 'trust but verify' has significant meaning.").

One last matter to address is Cartessa's request for costs and fees. (Doc. 105 at 12; Doc. 111 at 11.) Rule 37(a)(5)(A) provides that when a motion to compel is granted, the court "must" require "the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless (1) the motion was "premature," (2) the non-movant's conduct was "substantially justified," or (3) "other circumstances make an award of expenses unjust." Applying these standards, the Court concludes that ABM's position was substantially justified (if barely) and thus denies Cartessa's request. This finding of substantial justification is based on the fact that ABM reasonably could have concluded that its efforts during the meet-and-confer process to address Cartessa's questions about the seeming inaccuracies and omissions in its earlier disclosures were sufficient to discharge its discovery obligations.

…

…

…

Accordingly, **IT IS ORDERED** that Cartessa's motion to compel (Doc. 105) is **granted**. ABM must produce the requested records within 14 days of the issuance of this order.

Dated this 5th day of March, 2021.

_____
Dominic W. Lanza
United States District Judge